UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL NO. 478 PENSION FUND,
Individually and on Behalf of All Others Similarly
Situated,

                Plaintiff,                              15-CV-3599 (KMW)

                                                                       **Opinion and Order**

      -against-

FXCM INC., DROR NIV, and ROBERT LANDE,

                Defendants.
----------------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

       This is a putative securities fraud class action against FXCM, Inc. and its CEO and CFO (collectively "Defendants").  Plaintiff alleges that FXCM issued false and misleading statements about its business operations and the strength of its financial prospects.  Plaintiff claims that these false and misleading statements artificially increased the price of FXCM's stock.

       Several individuals and groups have moved to be appointed lead plaintiff for the putative class.  Each movant also seeks to have its counsel appointed lead counsel.  For the reasons stated below, the Court APPOINTS the Policemen's Annuity and Benefit Fund of Chicago ("PABF Chicago") lead plaintiff and Scott+Scott lead counsel for the putative class.

**I.     BACKGROUND**

*A.  The Complaint*

       FXCM provides foreign exchange trading and related services to retail and institutional customers.  (Complaint ¶2, [ECF No. 1]).  FXCM acts as an agent between retail customers and

1

institutional customers worldwide. *Id.* FXCM provides customers access to over-the-counter foreign exchange markets through its proprietary technology platform. *Id.*

On May 8, 2015, Plaintiff International Union of Operating Engineers Local No. 478 Pension Fund ("Engineers 478") filed this class action "on behalf of all purchasers of FXCM common stock between June 11, 2013 and January 20, 2015, inclusive." *Id.* ¶1. Engineers 478 alleges that "Defendants issued materially false and/or misleading statements regarding the Company's business operations and the strength of its financial prospects, while concealing weaknesses concerning its core business." *Id.* ¶3.

### B. The Lead Plaintiff Motions

On July 7, 2015, six parties filed motions seeking appointment as lead plaintiff. *See* [ECF Nos. 13, 16, 19, 22, 25, 27]. Four of those parties have since withdrawn their motions. *See* [ECF Nos. 30-33]. Two movants remain: (1) the Pension Fund Group—a group comprised of Teamsters Local 710 Pension Fund and Inter-Local Pension Fund GCC/IBT; and (2) PABF Chicago. [1]

Teamsters Local 710 Pension Fund ("Teamsters 710") suffered losses of approximately $1,019,186. (Declaration of David A. Risenfeld at Ex. C, [ECF No. 15-3]). Inter-Local Pension Fund GCC/IBT ("Inter-Local Fund") suffered losses of approximately $534,350. *Id.* These two members of the Pension Fund Group aggregate their losses to reach an approximate financial loss total of $1,553,536. *Id.* Movant PABF Chicago suffered losses of approximately $1,100,229. (Declaration of Joseph P. Guglielmo at Ex. C, [ECF No. 24-3]).

---

[1] Movant Luzerne County Retirement System supports movant PABF Chicago's appointment as lead plaintiff because it believes PABF Chicago suffered the largest financial loss. (Response of Luzerne County Retirement System to Competing Motions for Appointment as Lead Plaintiff and Selection of Lead Counsel at 2, [ECF No. 33]). Joint-movants Steven Dienger and Jack Weidhorn believe that the Pension Fund Group has the largest financial interest in the case. (Notice of Non-Opposition to Lead Plaintiff Motion at 1, [ECF No. 32]).

**II.     APPOINTMENT OF THE LEAD PLAINTIFF**

*A.  The PSLRA Framework*

Appointment of lead plaintiffs in securities class action suits is governed by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  Congress, in enacting the PSLRA, sought to

> prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel . . . . The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.

*Peters v. Jinkosolar Holding Co. Ltd.*, 11-CV-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (Oetken, J.) (internal citation and quotation marks omitted).  The procedures outlined in the PSLRA govern the appointment of lead plaintiffs.  *See* Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Duties of Institutional Investors in Securities Litigation*, 56 Bus. Law. 1381, 1383 (2001) ("The heart of the PSLRA is the statutory procedures enacted to determine which party will be allowed to control securities class action litigation as the 'lead plaintiff.'").

Courts are to designate as lead plaintiff the party "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the party that (1) filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought; and (3) otherwise satisfies the requirements of Rule 23.  *Id*. § 78u-4(a)(3)(B)(iii)(I).[2]  That presumption "may be rebutted only upon proof by a member of the

---

[2] For purposes of appointing a lead plaintiff, the only Rule 23 requirements that must be met are typicality and adequacy.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) (Marrero, J.); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (Scheindlin, J.).

3

purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).

Courts in this District use a four-factor test to determine which party has the largest financial interest. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2008) (Marrero, J.). The four factors are:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*Id.* at 395. The most important of these factors is financial loss. *Id.*; *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, 08-CV-7281, 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008) (Keenan, J.); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (Buchwald, J.).

The prevailing view in this District is that unrelated investors may join together to aggregate their financial losses only "'if such a grouping would best serve the class.'" *In re CMED Sec. Litig.*, 11-CV-9297, 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) (Forrest, J.) (quoting *Varghese*, 589 F. Supp. 2d at 392). The overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers. *Varghese*, 589 F. Supp. 2d at 392; *Khunt v. Alibaba Grp. Holding Ltd.*, 15-CV-0759, 2015 WL 1954134, at *7 (S.D.N.Y. May 1, 2015) (McMahon, J.) ("Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, 'To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.'" (quoting *In re Donnkenny Inc.*

4

*Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (Cedarbaum, J.))).  The factors courts consider in evaluating the grouping of unrelated investors include:

> (1) the existence of a pre-litigation relationship between group members;
> (2) involvement of the group members in the litigation thus far;
> (3) plans for cooperation;
> (4) the sophistication of the group members; and
> (5) whether the members chose outside counsel, and not vice versa.

*Varghese*, 589 F. Supp. 2d at 392.  The burden is on the proposed group to proffer an evidentiary showing that aggregation is appropriate.  *Id.*

Additionally, "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 (S.D.N.Y. 2005) (Scheindlin, J.); *Malasky v. IAC/Interactivecorp*, 04-CV-7447, 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (Holwell, J.) (citing cases); *see also* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. Rep. No. 104-98, at 10-11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'").

### B. *The Members of the Pension Fund Group Cannot Aggregate Losses*

The Pension Fund Group cannot aggregate its financial losses because its two members, Teamsters 710 and Inter-Local Fund, are unrelated entities that (1) do not have a pre-existing relationship; (2) do not have an adequate plan for cooperation; and (3) have not shown that their

grouping was not the product of lawyer-driven litigation.  *See Varghese*, 589 F. Supp. 2d at 392.  The Pension Fund Group has the highest financial losses only if it is allowed to aggregate the losses of its two unrelated members.  After carefully scrutinizing the Pension Fund Group's attempt to aggregate losses, the Court concludes, for the reasons set forth below, that the Group's members cannot aggregate losses for purposes of lead plaintiff analysis.

First, Teamsters 710 and Inter-Local Fund do not proffer sufficient evidence to establish that they have a pre-existing relationship, which weighs against their attempt to aggregate losses.  The only link between the two funds is that they are both part of a twenty-six member professional organization, the "Teamsters Joint Council 25."  *See* (Joint Declaration in Support of Motion for Appointment as Lead Plaintiff ¶4, [ECF No. 15-4]).  But "common membership in certain professional organizations" is simply insufficient to establish a meaningful pre-existing relationship for the purposes of loss aggregation.  *In re Petrobras Sec. Litig.*, 14-CV-9662, 2015 WL 2341359, at *3 (S.D.N.Y. May 17, 2015) (Rakoff, J.).  In fact, the Pension Fund Group itself admits that its members "lack economic and familial ties."  (The Pension Funds' Reply Mem. of Law in Further Supp. of Their Lead Pl. Mot. at 3), [ECF No. 39]).  Other than conclusory statements that Teamsters 710 and Inter-Local Fund are familiar with each other, (Joint Declaration in Support of Motion for Appointment as Lead Plaintiff ¶4), there is no evidence that the two members of the Pension Group have a pre-existing relationship.  *See In re eSpeed*, 232 F.R.D. at 100 ("a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA.").

Second, Teamsters 710 and Inter-Local Fund do not have an adequate plan for cooperation, which weighs against their attempt to aggregate losses.  In their Joint Declaration, Teamsters 710 and Inter-Local Fund state only that they will "confer via phone and/or email as

necessary to ensure that we are able to independently communicate and make timely decisions." (Joint Declaration in Support of Motion for Appointment as Lead Plaintiff ¶7).  These conclusory assurances are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation.  *See, e.g.*, *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (Pauley, J.) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation."); *Varghese*, 589 F. Supp. 2d at 394 (rejecting the group's "conclusory assertion" that it would be able to effectively manage the litigation).  The Pension Fund Group has failed to provide the Court with anything beyond conclusory assurances that appointing a group of unrelated investors will not lead to fragmentation.  *See Varghese*, 589 F. Supp. 2d at 394 (denying aggregation where there was no evidentiary showing that group members were able to work cohesively together to effectively manage the litigation apart from their lawyers).

      Third, Teamsters 710 and Inter-Local Fund fail to provide evidence that their grouping was not the product of lawyer-driven litigation, which weighs against their attempt to aggregate losses.  In enacting the PSLRA, Congress sought to end the practice of lawyers seeking lead plaintiffs.  *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. at 157-58 (citing H.R. Conf. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 730, 730-34).  Nothing before the Court indicates that Teamsters 710 and Inter-Local Fund formed this group independent of counsel.  In fact, in their Joint Declaration, Teamsters 710 and Inter-Local Fund acknowledge

that only after "conferring with one another and with counsel" did the two funds decide to jointly file a motion for appointment as lead plaintiff. (Joint Declaration in Support of Motion for Appointment as Lead Plaintiff ¶5); *see In re CMED*, 2012 WL 1118302, at *5 (concluding that a three-member investor group that jointly moved for lead plaintiff designation "in consultation with our counsel" was not independently formed). Teamsters 710 and Inter-Local Fund have failed to meet their evidentiary burden to prove that their grouping was not the product of lawyer-driven litigation.

The Pension Fund Group's losses will not be aggregated for purposes of the lead plaintiff analysis. The remaining movant, PABF Chicago, has the largest financial loss.

### C.  PABF Chicago is Appointed Lead Plaintiff

After considering all movants' lead plaintiff motions, the Court appoints PABF Chicago lead plaintiff in this case. PABF Chicago is an institutional investor that has suffered the greatest financial loss, and satisfies the typicality and adequacy requirements of Rule 23.

#### i.  PABF Chicago's Financial Losses

PABF Chicago states that it purchased 104,198 shares of FXCM stock and suffered losses of approximately $1,100,229 (Declaration of Joseph P. Guglielmo at Ex. C). Thus, PABF Chicago alleges greater financial losses than both Teamsters 710, which claims $1,019,186 in losses stemming from the purchase of 85,187 shares, and Inter-Local Fund, which claims $534,350 in losses stemming from the purchase of 36,195 shares. (Declaration of David A. Risenfeld at Ex. C).

#### ii.  PABF Chicago's Typicality and Adequacy Pursuant to Rule 23

Typicality. The typicality requirement of Rule 23(a)(3) is met where "'each class member's claim arises from the same course of events, and each class member makes similar

legal arguments to prove the defendant's liability.'"  *Canson v. WebMD Health Corp.*, 11-CV-5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (Keenan, J.) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, PABF Chicago's claims are based on the same legal theory (violations of the Exchange Act) and arise from the same events and course of conduct (FXCM's false or misleading statements) as the Class's claims.  Thus, PABF Chicago's claims are typical of those of the Class.

<u>Adequacy</u>.  The adequacy requirement of Rule 23 is satisfied if the lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  For the requirement to be satisfied, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy."  *Xianglin Shi v. Sina Corp.*, 05-CV-2154 et al., 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal citation omitted).

PABF Chicago satisfies the adequacy requirements because (1) no conflict between PABF Chicago and the members of the Class has been brought to the Court's attention; (2) the selected counsel is qualified (as discussed in Section III *infra*); and (3) PABF Chicago has sufficient interest in the outcome because it suffered significant losses from Defendants' purported misrepresentations.

### III. APPOINTMENT OF COUNSEL

The PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court has discretion to interfere with the lead plaintiff's selection of lead counsel "when warranted to

9

protect the interests of the class." *Teran v. Subaye, Inc.*, 11-CV-2614 et al., 2011 WL 4357362, at *9 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.) (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention" (internal citation and quotation marks omitted)). When deciding whether to approve the proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 398 (considering proposed counsel's "extensive experience in prosecuting securities fraud actions" before approving the lead plaintiff's selection); *Xianglin Shi*, 2005 WL 1561438, at *5 (same); *In re Elan Corp. Sec. Litig.*, 02-CV-865, 2002 WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002) (Maas, Mag. J.) (same).

PABF Chicago has selected Scott+Scott as lead counsel. Scott+Scott has extensive experience in the area of securities litigation and class actions, and has obtained hundreds of millions of dollars for victims of corporate fraud. *See, e.g.*, *In re Priceline.com Inc. Sec. Litig.*, 00-CV-1844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, 99-CV-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, 01-CV-0219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, 00-CV-230077 (Cir. Ct. Jackson County, Mo.) ($50 million); *In re Northwestern Corp. Sec. Litig.*, 03-CV-04049 (D.S.D.) ($61 million); *Irvine v. Imclone Systems, Inc.*, 02-CV-0109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, 02-CV-02133 (D. Conn.) ($27 million); *In re Washington Mutual Mortg. Backed Sec. Litig.*, C09-37 (W.D. Wash.) ($26 million).

The Court finds that Scott+Scott has the requisite experience to serve as lead counsel, and thus will be able to effectively prosecute the action.

**IV.     CONCLUSION**

The Court APPOINTS PABF Chicago lead plaintiff and Scott+Scott lead counsel.

A Rule 16 Conference shall take place on December 14, 2015 at 4:00 p.m.

The Clerk of the Court is respectfully directed to terminate the following motions: ECF Nos. 13, 16, 19, 22, 25, and 27.

SO ORDERED.

DATED:   New York, New York
         November 12, 2015

/s/
KIMBA M. WOOD
United States District Judge