MANDATE

N.Y.S.D. Case # 15-cv-3599(KMW)

18-2604-cv
*Retirement Bd. v. FXCM, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand nineteen.

Present:
> JOHN M. WALKER, JR.,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 09 2019

_____

RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, on behalf of the Policemen's Annuity and Benefit Fund of Chicago,

>*Plaintiff-Appellant*,

POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 478 PENSION FUND, Individually and on behalf of all others similarly situated,

>*Plaintiffs*,

>v.                                                                                              18-2604-cv

FXCM INC., DROR NIV,

>*Defendants-Appellees*.

_____

1

MANDATE ISSUED ON 05/09/2019

| | |
|---|---|
| For Plaintiff-Appellant: | DEBORAH CLARK-WEINTRAUB, (Beth A. Kaswan, *on the brief*), Scott+Scott Attorneys at Law LLP, New York, NY; (Amanda F. Lawrence, *on the brief*, Scott+Scott Attorneys at Law LLP, Colchester, CT). |
| For Defendants-Appellees: | PAUL R. BESSETTE, (Israel Dahan, *on the brief*), King & Spalding LLP, New York, NY; (Michael Biles, Tyler W. Highful, Rebecca Matsumura, *on the brief*, King & Spalding LLP, Austin, TX). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Wood, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Retirement Board of the Policemen's Annuity and Benefit Fund ("Plaintiff") appeals from an order of the United States District Court for the Southern District of New York, dated August 10, 2018, dismissing its Second Amended Complaint ("SAC") alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 for failure adequately to allege either scienter or material misrepresentations. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, 333 F. Supp. 3d 338, 347 (S.D.N.Y. 2018). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the dismissal of a complaint *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). An action under Section 10(b) of the Exchange Act has the following basic elements: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market

2

cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (internal citations and emphasis omitted). While Federal Rule of Civil Procedure 9(b) provides that "conditions of a person's mind may be alleged generally," under the Private Securities Litigation Reform Act ("PSLRA"), a securities plaintiff must nevertheless allege facts that suggest a "strong inference" of scienter. *See* 15 U.S.C. § 78u-4(b)(2)(A). When assessing whether scienter is present, "[o]ur job is not to scrutinize each allegation in isolation but to assess all of the allegations holistically." *Slayton v. Am. Express Co.*, 604 F.3d 758, 775 (2d Cir. 2010) (internal quotation marks omitted).

The Supreme Court has characterized a "strong inference" as one that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Nevertheless, without a showing of motive, "the strength of the circumstantial allegations must be correspondingly greater." *Id.* at 199 (internal quotation marks omitted). We have said repeatedly that a plaintiff must do more than allege "fraud by hindsight." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (internal quotation marks omitted).

We agree with the district court that Plaintiff has not alleged facts amounting to a strong inference of scienter, and thus we affirm the district court's dismissal of the SAC.[1] As the

---

[1] Because our conclusion as to scienter is sufficient to resolve this case, we need not address whether the district court correctly concluded that Plaintiff also failed to allege any material

3

district court observed, Plaintiff makes no argument as to any motive to defraud on the part of Defendants-Appellees FXCM, Inc. ("FXCM") and Dror Niv ("Niv") (together, "Defendants").[2] Instead, Plaintiff focused on, *inter alia*, how Niv "falsely described the risks inherent in FXCM's business" as well as the risk FXCM took by holding such a large position in the Euro/Swiss Franc ("EUR/CHF") currency pair. *See Ret. Bd.*, 333 F. Supp. 3d at 350-51 (describing and categorizing Plaintiff's scienter allegations).

Allegations about Defendants' representations of FXCM's business model amount to no more than "fraud by hindsight." *See Novak*, 216 F.3d at 309 (internal quotation marks omitted). Plaintiff relies on statements by analysts and other market participants in the wake of the shock caused by the Swiss National Bank's ("SNB's") unexpected move to de-peg the Franc from the Euro that they did not fully understand the risks that FXCM was taking. But such allegations do not constitute strong circumstantial evidence of conscious or reckless conduct on Defendants' part when, according to Plaintiff's own SAC, the SNB's decision to de-peg and its attendant consequences were themselves deemed by the market to be a "black swan-like" event. Furthermore, as the district court aptly pointed out, allegations as to past volatile currency events or the large reductions in FXCM's capital they caused "weigh *against* a finding of scienter," as they "show[] that FXCM's model was able to withstand high-volatility events." *Ret. Bd.*, 333 F. Supp. 3d at 352. Plaintiff alleges that several of FXCM's competitors changed their margin policies on the EUR/CHF pair in the months leading up to the de-pegging while FXCM did not; however, that FXCM chose to keep its margin requirements low when some of its competitors

---

misrepresentations.

[2] Robert Lande is included in the caption for this case but was not named as a defendant in the SAC. *See* Def.-App.'s Brief at 26 n.6. Accordingly, the Clerk of Court is directed to remove his name from the caption.

4

presciently raised them cannot itself raise a strong inference of scienter on the part of Defendants. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir. 1996) ("Not every bad investment is the product of misrepresentation."); *see also Novak*, 216 F.3d at 309 ("Corporate officials need not be clairvoyant . . . .").

We agree with Plaintiff that Defendants must have known that, as the SNB's peg of the Franc to the Euro was temporary, it would be lifted at some point and the Franc's price would necessarily change. However, we disagree that it thus follows that Niv necessarily knew of the "potentially crippling consequences" such an event could cause for FXCM. *See* Pl.-App.'s Brief at 46. For example, while one FXCM ex-employee questioned—to another manager, not to Niv—what would happen to FXCM upon de-pegging, even he suggested that the Franc would slip only several hundred pips (rather than over 1,000, as actually happened). Movement of a couple hundred pips—*i.e.* 1/100's of a percent, the general unit for measuring currency movements—is something FXCM had weathered before. And although Plaintiff asserts it "adequately alleged both conscious misbehavior and recklessness on the part of Niv and the Company in failing to disclose to investors the existing $2.2 billion [net open position] on the EUR-CHR pair for which the Company did not maintain cash reserves," Pl.-App.'s Brief at 47, we agree with the district court that the more compelling inference is that Niv did not perceive a credible risk that the SNB would de-peg the Franc any time soon, and thus saw no need to disclose the large position. *See Tellabs*, 551 U.S. at 324 ("[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations.").

As the district court noted, Plaintiff's allegations about a "cover up" following the de-pegging do not suffice to create a strong inference of scienter either. *See Ret. Bd.*, 333 F.

5

Supp. 3d at 353-54. Plaintiff attempts to make much of several "contradictions" in statements in emails and to the Commodity Futures Trading Commission about the sort of losses FXCM suffered and whether FXCM experienced liquidity failures during the crash. However, to the extent these statements are even contradictory (which, as the district court pointed out, they may not be), this "does not make it more likely that *before* January 15, 2015, Niv considered the de-pegging of the Euro and the Franc a serious risk, and lied to investors about that risk." *Id.* at 354; *see also Slayton*, 604 F.3d at 775-76 (finding no strong inference of scienter when defendant was "stunned" by loss and plaintiffs had alleged no motive for misleading investors).

Lastly, because we affirm the district court's decision to dismiss Plaintiff's Section 10(b) and Rule 10b-5 claim, we see no basis on which to revive its Section 20(a) claim. *See SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person . . . .").

We have considered Plaintiff's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6